FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:47 am, Feb 09, 2026
JEFFREY P. COLWELL, CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IVAN LOSEV, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; JOSEPH EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services; TED KIM, in his official capacity as Associate Director of Refugee, Asylum and International Operations Directorate of U.S. Citizenship and Immigration Services,<br><br>*Defendants*. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF** |

## INTRODUCTION

1. Plaintiff Ivan Losev (hereafter "Plaintiff") is an applicant for asylum who sought protection in the United States. After arriving in the United States, Plaintiff filed a Form I-589, Application for Asylum and for Withholding of Removal (hereafter "asylum application" or "Form I-589") with U.S. Citizenship and Immigration Services (USCIS) on or about June 2, 2022.

2. Although Plaintiff's application was filed more than 3.5 years ago, Defendants have not scheduled him for an interview, much less adjudicated his application. This is contrary to Defendants' duty to do so within a reasonable time.

3. Defendants' failure to timely adjudicate Plaintiff's asylum application has harmed him and is causing, and will continue to cause, him great distress and anxiety.

4. Plaintiff therefore seeks an order from this Court under the Administrative Procedure Act (APA) and the Mandamus Act compelling Defendants to promptly schedule him

1

for an interview and then adjudicate his asylum application.

## JURISDICTION

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (Mandamus Act). The Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, 5 U.S.C. §§ 702, 706 and 28 U.S.C. § 1361. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

## VENUE

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because this is a civil action in which Defendants are officers or employees of the United States, acting in their official capacity, and Plaintiff resides in this District, and no real property is involved in this action.

## PARTIES

7.     Plaintiff is a native of Russia who fled to the United States due to fear of persecution in Russia and currently resides in Aurora, Colorado. His asylum application is pending with U.S. Citizenship and Immigration Services.

8.     Defendant Kristi Noem is the Secretary of the Department of Homeland Security ("DHS") and is sued in her official capacity. As Secretary of DHS, Defendant Noem has ultimate responsibility for the administration and enforcement of the nation's immigration laws, including the oversight of USCIS and the adjudication of asylum applications.

9.     Defendant Joseph Edlow is the Director of U.S. Citizenship and Immigration Services and is sued in his official capacity. Defendant Edlow is responsible for the overall management and operation of USCIS, including ensuring that asylum applications are adjudicated within a reasonable time as required by law.

10.    Defendant Ted Kim is the Associate Director of the Refugee, Asylum and

International Operations Directorate of U.S. Citizenship and Immigration Services and is sued in his official capacity. Defendant Kim is responsible for overseeing the asylum program nationwide, including policies and procedures governing the adjudication of affirmative asylum applications.

## ASYLUM APPLICATION PROCESS

11. Asylum seekers come to the United States seeking protection from persecution in their country of origin. Any noncitizen who is in the United States or seeking admission at a port of entry may apply for asylum. 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A). An applicant must demonstrate either past persecution or a fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i), 1231(b)(3)(A).

12. A grant of asylum provides a path to lawful permanent residence and U.S. citizenship. A person may apply for lawful permanent residence one year after being granted asylum and for naturalization to U.S. citizenship five years after becoming a lawful permanent resident. 8 U.S.C. §§ 1159(b), 1427(a).

13. With limited exceptions not relevant here, USCIS has jurisdiction over all asylum applications filed by a noncitizen who is not in removal proceedings. 8 C.F.R. § 208.2. Applications filed with USCIS are commonly referred to as "affirmative asylum applications."

14. USCIS interviews all asylum applicants over whom it has jurisdiction prior to making a decision. *See generally* 8 U.S.C. § 1158(d)(5)(A)(ii); 8 C.F.R. § 208.9.

15. Absent exceptional circumstances, Congress mandated that an initial interview on an asylum application must commence within 45 days after the application is filed and the application must be adjudicated within 180 days after it is filed. 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). Delay requested or caused by the applicant will toll this period. 8 C.F.R. § 208.7(a)(2). Although

3

these statutory deadlines are not enforceable, *see* 8 U.S.C. § 1158(d)(7), they demonstrate Congress' intent that asylum applications be adjudicated promptly.

16. Each year for at least 10 years, USCIS has received more affirmatively filed asylum applications than it is able to adjudicate, resulting in an ever-increasing backlog of pending asylum applications. During fiscal year (FY) 2024, that backlog was more than 1,500,000. *See* U.S. Department of Homeland Security, Office of Inspector General, USCIS Faces Challenges Meeting Statutory Timelines and Reducing Its Backlog of Affirmative Asylum Claims (July 3, 2024), https://www.oig.dhs.gov/sites/default/files/assets/2024-07/OIG-24-36-Jul24.pdf. (OIG Report). Hundreds of thousands of these applications have been delayed for over 2 years, with over one hundred thousand languishing for more than six years. *See, e.g., id*. On information and belief, the backlog is the same or greater now than it was at the time of the OIG Report.

17. While USCIS allegedly maintains a chronological queue of applicants based upon the date that the applications were filed, it does not adjudicate them in chronological order. Instead, while purporting to follow a reverse chronological order, with the most recently filed applications being adjudicated first (referred to as "last in, first out" or "LIFO"), it routinely deviates significantly from even this order.

18. USCIS has established two tracks for scheduling asylum interviews. On Track 1, USCIS purports to follow a LIFO model by scheduling interviews in the following order of priority: (1) applications that were scheduled but had to be rescheduled at the applicant's or USCIS' request; (2) applications that have been pending for 21 days or less; (3) all other pending applications, starting with newer filings and working back towards older filings. *See* USCIS, Affirmative Asylum Interview Scheduling, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited February 9, 2026)

4

(Affirmative Asylum Interview Scheduling). Due to other workload priorities, USCIS is unable to schedule all newly filed asylum applications for interviews within 21 days. *Id*. Whether an application is scheduled within this 21-day period is random, depending on ever-shifting factors including the number of other applicants who filed within this period, the number of USCIS personnel assigned to interview applicants at the time, and whether USCIS has shifted personnel from affirmative asylum cases to other work. Where an applicant's case is not scheduled within 21 days of filing under the second priority, it falls to the third priority.

19. USCIS states that it follows the LIFO model under Track 1 to discourage the filing of frivolous applications by those who only wish to obtain work authorization, a benefit which asylum applicants are entitled to once their applications have been pending for more than 180 days. This rationale is undercut by the fact that USCIS is unable to schedule interviews at a volume that is commensurate with the volume of newly filed asylum applications. In fiscal year 2022, USCIS received 232,000 affirmative asylum applications, *see* OIG Report at 6; on information and belief, however, USCIS scheduled fewer than 35,000 interviews under the first track during that fiscal year, or under 15%. Similarly, in FY 2023, USCIS received 444,000 affirmative asylum applications, *see* OIG Report at 6, but, on information and belief, scheduled under 25,000 interviews under the first Track, or under 6%.

20. On Track 2, USCIS assigns a variable number of asylum officers to complete applications pending in the backlog, starting with the oldest applications and working forward (referred to as first in, first out or FIFO). *See* Affirmative Asylum Interview Scheduling. Further, the number of Track 2 interviews varies widely from year to year. On information and belief, between FY 2019 and FY 2023, these ranged from a low of 6,155 in FY 2023 to a high of 27,467 in FY 2019. Finally, USCIS schedules interviews for some applicants outside its two-track priority

5

system altogether, providing them with expedited scheduling. *See* Affirmative Asylum Interview Scheduling.

21. As a result, USCIS employs an ever-shifting hybrid LIFO/FIFO model. On any given day, USCIS might interview some applicants at the back of the chronological queue (those in the second priority of Track 1 whose applications have been pending for 21 days or less), some whose applications have been pending for slightly longer than 21 days (those in the third priority of Track 1), and some from the front of the chronological queue (those in Track 2 whose applications have been pending the longest).

## FACTUAL ALLEGATIONS

22. Plaintiff fled Russia to seek protection from persecution and entered the United States on August 10, 2021.

23. Plaintiff filed an asylum application on June 2, 2022. To date, USCIS has not scheduled an interview for Plaintiff.

24. Plaintiff filed his asylum application while residing in Arizona, at which time the application was assigned to the Los Angeles Asylum Office. Plaintiff subsequently relocated to Colorado and timely submitted a change of address to USCIS, which was confirmed as processed. However, upon recent inquiry with USCIS, Plaintiff was informed that his asylum application remains assigned to the Los Angeles Asylum Office. Regardless of internal USCIS routing, address processing, or office assignment, Defendants remain responsible for adjudicating Plaintiff's asylum application within a reasonable time.

25. USCIS did not schedule an interview for Plaintiff within 21 days of the filing of his asylum application. Thus, Plaintiff missed the opportunity for an interview under priority 2 of Track 1 and fell into priority 3 of Track 1. Under Defendants' current system for scheduling asylum

interviews, the longer Plaintiff remains in priority 3 of Track 1, the longer he will have to wait for an interview, since there is an ever-increasing number of more recent applicants falling behind him who will be prioritized for scheduling. Moreover, because there are well over a million applicants who filed before Plaintiff, he will not be scheduled under Track 2 for many years, if not decades.

26. Defendants cannot provide Plaintiff with any reliably accurate prediction of the amount of time he will have to wait for an interview to be scheduled.

27. USCIS' hybrid LIFO/FIFO model is not a rational system for meeting the demand of asylum seekers. The LIFO model does not serve the purpose USCIS seeks to obtain but instead disadvantages Plaintiff over other applicants who filed both before and after him solely because USCIS did not schedule his interview within 21 days of their applications being filed.

28. Applicants who filed both before and after Plaintiff are regularly scheduled for interviews before him.

29. USCIS's delay in scheduling Plaintiff has caused and will continue to cause him harm. During this prolonged period of inaction, Plaintiff has remained in a state of legal and personal uncertainty, unable to obtain final resolution of his immigration status despite full compliance with all requirements imposed by USCIS.

30. The continued delay has caused Plaintiff significant hardship. Plaintiff's ability to plan his future has been constrained by the absence of a decision on his application, including limitations on international travel, professional development opportunities, and long-term stability. Plaintiff has been unable to travel outside the United States to attend important personal and professional events or to visit family members in third countries, resulting in ongoing emotional strain.

31. The uncertainty surrounding Plaintiff's status has also imposed psychological stress

and anxiety associated with living for years without a determination on a life-altering application. This prolonged limbo has affected Plaintiff's sense of security and well-being, as well as his ability to make ordinary life decisions related to career advancement, housing, and long-term planning.

32. Plaintiff has made repeated, good-faith efforts over several years to obtain adjudication of his asylum application without seeking judicial intervention.

33. On or about October 21, 2022, Plaintiff wrote to President Joseph R. Biden seeking assistance regarding the prolonged delay in adjudication of his asylum application. On December 29, 2022, USCIS responded, advising that the White House had referred Plaintiff's correspondence to the USCIS Contact Center and stating that USCIS could not provide updates on Plaintiff's asylum case, directing Plaintiff to contact the appropriate asylum office directly.

34. Plaintiff also sought assistance from his Congressional representative. On January 19, 2023, the office of U.S. Representative Greg Stanton informed Plaintiff that it had contacted the Los Angeles Asylum Office on Plaintiff's behalf. USCIS responded that, due to other urgent priorities and diverted resources, the Los Angeles Asylum Office was interviewing on a significantly reduced schedule and that Plaintiff's case remained pending without any identified timeframe for an initial interview.

35. On April 19, 2023, Plaintiff contacted the Los Angeles Asylum Office by email requesting expedited scheduling of his asylum interview. On May 8, 2023, the Los Angeles Asylum Office responded that it was unable to grant Plaintiff's request for an expedited interview.

36. In 2024, Plaintiff made multiple additional attempts to obtain an interview by seeking placement on the short-notice interview list. On January 8, 2024, Plaintiff contacted the Los Angeles Asylum Office regarding the short-notice list, and on January 9, 2024, the office responded that the list was closed and that applicants were not being added. Plaintiff followed up

on April 16, 2024, and was again informed that the short-notice list remained closed with no timeframe for reopening. Plaintiff made a further inquiry on May 20, 2024, and on May 24, 2024, the Los Angeles Asylum Office reiterated that the short-notice list remained closed.

37. Despite Plaintiff's repeated, good-faith efforts over several years – including direct inquiries, requests for expedited processing, and Congressional assistance – USCIS has failed to adjudicate Plaintiff's asylum application or provide any meaningful indication as to when adjudication will occur.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1))

38. Plaintiff re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

39. Under the APA, federal agencies, including USCIS, are required to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

40. Defendants have a nondiscretionary duty to adjudicate Plaintiff's asylum application. *See* 8 U.S.C. § 1158(d)(5); 8 C.F.R. §§ 208.9, 208.14(c).

41. Defendants failed to comply with this obligation by failing to schedule an interview for Plaintiff or adjudicate his asylum application for over 3 years and 8 months.

42. Considering relevant factors, such as Congress' intent that asylum interviews be scheduled within 45 days and asylum applications be adjudicated within 180 days, Defendants' lack of a reasoned system for handling the backlog of pending asylum applications, the scope and extent of the interests harmed by Defendants' delay, including the health and welfare of Plaintiff,

and the lack of evidence that expediting the agency's action would harm competing priorities, Defendants' delay is unreasonable in this case. *See, e.g., Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) (citing *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)). Granting relief would not cause Plaintiff to jump a queue of similarly situated petitioners because such a queue has not been properly maintained and Plaintiff's petition has not been processed in the proper order. *See id.* at 375-76.

43. Defendants' failure to timely schedule an interview and adjudicate Plaintiff's asylum application in 3 years and 8 months constitutes an agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

44. Plaintiff is entitled to relief under the APA in the nature of an order compelling Defendants to timely schedule an interview and adjudicate his asylum application.

## COUNT TWO
### (Violation of the Mandamus Act, 28 U.S.C. § 1361)

45. Plaintiff re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

46. Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361.

47. Plaintiff falls within the zone of interests protected by the asylum provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, et seq. He has a statutory right to apply for asylum and to have an interview scheduled and his application adjudicated in a reasonable period of time. 8 U.S.C. § 1158(d)(5); 8 C.F.R. §§ 208.9, 208.14(c).

48. Defendants have a nondiscretionary duty to schedule Plaintiff for an interview and adjudicate his asylum application. *See id*. Because Plaintiff has a right to file an asylum application,

USCIS has a corresponding duty to interview him and adjudicate that the application. Federal agencies, including Defendants, are required to conclude matters presented to them within a "reasonable time." 5 U.S.C. § 555(b).

49. Considering relevant factors, such as Congress' intent that asylum interviews be scheduled within 45 days and be adjudicated within 180 days, Defendants' lack of a reasoned system for handling the backlog of pending asylum applications, the scope and extent of the interests harmed by Defendants' delay, including the health and welfare of Plaintiff, and the lack of evidence that expediting the agency's action would harm competing priorities, Defendants' delay is unreasonable in this case. *See Gonzalez*, 985 F.3d at 375.

50. There are no other adequate remedies available to Plaintiff to obtain an interview and adjudication of the asylum application.

51. Plaintiff is entitled to relief in the nature of mandamus pursuant to 28 U.S.C. § 1361 to compel Defendants to timely schedule an interview and adjudicate his asylum application.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court to:

(1) Assume jurisdiction over this matter;

(2) Declare that Defendants' delay in scheduling Plaintiff's interview and adjudicating his asylum application is unreasonable under the APA, 5 U.S.C. § 706(1);

(3) Order Defendants to promptly schedule Plaintiff's interview and adjudicate his asylum application;

(4) Issue a writ of mandamus directing Defendants to promptly schedule Plaintiff's interview and adjudicate his asylum application;

(5) Award Plaintiff reasonable attorneys' fees and costs under the Equal Access to Justice

Act, *see* 28 U.S.C. § 2412(d), and on any other basis justified under law; and

(6) Grant any further relief this Court deems just and proper.

DATED this 9th day of February, 2026.

/s/ Ivan Losev
Ivan Losev
22959 E Smoky Hill Rd
Apt F308
Aurora, CO 80015
Telephone: (480) 845-3207
Email: ivanlosew1@gmail.com
Plaintiff, Pro se